UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TYRONE CAMPBELL,

              Petitioner,

v.                            Case No. 2:19-cv-334-JES-NPM

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

              Respondent.

_____

<u>**OPINION AND ORDER**</u>

This cause is before the Court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Petitioner Tyrone Campbell ("Petitioner"). (Doc. 1). At the Court's order (Doc. 15), Respondent filed a Response. (Doc. 13). Despite having an opportunity to do so, Petitioner did not file a reply.

Upon careful consideration of the pleadings and the state court record, the Court concludes that none of Petitioner's claims entitle him to federal habeas corpus relief. Because the Court was able to resolve the petition on the record, an evidentiary hearing is not warranted. *See* <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

## I.   Background and Procedural History

On June 17, 2011, a jury found Petitioner guilty of one count of second degree murder. (Doc. 20-5 at 790-91). The trial court sentenced Petitioner to life in prison with a mandatory minimum term of 25 years. (Doc. 20-3 at 266-71). Florida's Second

District Court of Appeal ("Second DCA") affirmed the judgment and conviction without comment. (Doc. 20-6 at 85).

Thereafter, Petitioner filed a motion and an amended motion under Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"). (Doc. 20-7 at 4—62, 136–86). The postconviction court entered an order granting an evidentiary hearing on three of Petitioner's grounds, and denying the remaining grounds. (Doc. 20-8 at 46–51.) The court held a hearing on March 27-28, 2017. (Id. at 333–402). Petitioner, through Counsel, withdrew one ground for relief at the evidentiary hearing (Id. at 335) and the postconviction court denied the remaining grounds in a written order. (Id. at 282–88). Florida's Second DCA affirmed per curiam without a written opinion. (Doc. 20-9 at 85).

Petitioner provided his federal habeas petition to prison officials for mailing on May 13, 2019. (Doc. 1).[1]

## II. Governing Legal Principles

### A. The Antiterrorism Effective Death Penalty Act ("AEDPA")

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

---

[1] Under the "mailbox rule," a pleading is considered filed by an inmate on the date it was delivered to prison authorities for mailing, which—absent contrary evidence—is the date it was signed. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). In this case, the petition was stamped as provided to officials for mailing on May 13, 2019. (Doc. 1 at 1.)

(1)     resulted in a decision that was contrary
        to, or involved an unreasonable
        application of, clearly established
        Federal law, as determined by the Supreme
        Court of the United States; or

(2)     resulted in a decision that was based on
        an unreasonable determination of the
        facts in light of the evidence presented
        in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  When reviewing a claim under §

2254(d), a federal court must presume that any "determination of

a factual issue made by a State court" is correct.  Id. § 2254(e).

The petitioner bears "the burden of rebutting the presumption of

correctness by clear and convincing evidence."  Id.  "Clearly

established federal law" consists of the governing legal

principles set forth in the decisions of the United States Supreme

Court at the time the state court issued its decision.  White v.

Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70,

74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law

if the state court either:  (1) applied a rule that contradicts

the governing law set forth by Supreme Court case law; or (2)

reached a different result from the Supreme Court when faced with

materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144,

1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application"

of the Supreme Court's precedents if the state court correctly

identifies the governing legal principle, but applies it to the

3

facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000) (<u>quoting</u> <u>Williams</u>, 529 U.S. at 406).

The section 2254(d) standard is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>White</u>, 572 U.S. at 420 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991); <u>Wilson v. Sellers</u>, 138 S. Ct. 1188 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of,

for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance. <u>Sellers</u>, 138 S. Ct. at 1196.

### B. Ineffective Assistance of Counsel

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness <u>and</u> that the deficient performance prejudiced the defense. <u>Id.</u> This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. <u>Burt v. Titlow</u>, 571 U.S. 12, 15 (2013) (<u>citing</u> <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms." <u>Id.</u> at 688. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470,

477 (2000) (quoting Strickland, 466 U.S. at 690).   Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

### C. Exhaustion

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b)(1). Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995).

A petitioner can avoid the application of the exhaustion rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate a reasonable probability the outcome of the proceeding would have differed. Crawford v. Head, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479–80 (1986).

### III. Discussion

To provide context for the claims raised in this petition, the relevant facts surrounding this case, taken from Petitioner's brief on direct appeal,[2] are summarized as follows:

> Debrena Walker was killed in her home in Ft. Myers on February 21, 2008. According to the medical examiner, she suffered four gunshot wounds and blunt trauma . . . The medical examiner believed that Ms. Walker was either crouching or kneeling when shot in the back. She was not sexually assaulted.
>
> Mr. Campbell was Ms. Walker's boyfriend for about a year, and the father of one of her children. He had lived at Ms. Walker's home for about eight months.
>
> Two of Ms. Walker's neighbors, both of whom knew Mr. Campbell from the time he lived with her, testified over objection about arguments involving Mr. Campbell which occurred before February 21. Jerrett Williams testified that a few days prior to that date he saw Mr. Campbell putting his clothes into a car. He and Ms. Walker were yelling and screaming, and Mr. Campbell threw a trash can []towards Ms. Walker. Another time Ms. Walker ran to him when Mr. Campbell chased her. Williams testified that the two often argued, but he never saw Mr. Campbell hit Ms. Walker. He admitted he was on medication and his mind was

---

[2] In its answer brief, the State accepted Petitioner's statement of facts. (Doc. 2-6 at 44).

"not as right" as three years ago when the incidents occurred.

David Snyder testified that he saw them argue on the Saturday before the shooting when Mr. Campbell was loading clothes into a car. Mr. Campbell wanted a necklace, and during the argument said "I'll kill you" to Ms. Walker. He too testified that while they often argued, he never saw Mr. Campbell hit Ms. Walker.

Ms. Walker's next door neighbor, Michael Brown, testified that he knew Mr. Campbell. Mr. Campbell and Ms. Walker argued constantly. Once Mr. Campbell mentioned that he thought Ms. Walker was seeing someone else. Brown saw Mr. Campbell looking in the window of Ms. Walker's home two days prior to the shooting at 5:30 a.m. Brown was home on the afternoon of February 21. He heard what he thought were 3-4 pops, like fireworks, at about 4:30 p.m. Looking over at Ms. Walker's residence, he saw Mr. Campbell - and no one else - come out of the front door, with a white towel in his hand. Mr. Campbell got into a car that had two other people in it.

A short while later when Courtney Walker, Ms. Walker's teenage daughter, came home from school, Mr. Brown told her what he had seen. Courtney went in the home, and came out screaming. Mr. Brown then called 911. A paramedic testified that Ms. Walker was dead when he arrived.

Courtney testified her mother and Mr. Campbell often argued, and that he would leave and come back. She never saw him hit her mother. They had argued the week prior, when her mother had packed Mr. Campbell's clothes.  At about 7 :00 a.m. on February 21, Mr. Campbell was at the house, sleeping on the couch, but Ms. Walker was trying to get him to leave. Courtney went to school at 8:00 a.m. When she came home that afternoon, she discovered her mother's body.

The police found two projectiles at the scene. Ms. Walker had pieces of a burnt plastic bag

> on her, and the police believed the firearm
> was fired through the bag.
>
> Mr. Campbell was located in a vacant house in
> Ft. Myers on March 10, 2008. He had on a wig,
> gave the police three fake names, and tried to
> speak with a foreign accent.

(Doc 20-6 at 11-15)(internal citations to the record omitted and slight alterations made for clarity).

Petitioner now raises eight grounds of ineffective assistance of trial counsel, Edward J. Kelly ("Counsel"). These grounds are exhausted to the extent they were raised in Petitioner's Rule 3.850 Motion and considered by Florida's Second DCA on direct appeal.[3] The Second DCA's summary rejection of the grounds raised in the postconviction court—even without explanation—qualifies as an adjudication on the merits, warranting deference. Therefore, to the extent the claims were exhausted, this Court will "look through" the Second DCA's decision to the postconviction court's rationale for denying these claims. Sellers, 138 S. Ct. at 1196.

**A.   Ground One**

Petitioner asserts that Counsel was ineffective for failing to ask for a continuance or recess so that the defense could adjust faulty video equipment and play a defense video for the jury's viewing. (Doc. 1 at 5). Specifically, Petitioner asserts that

---

[3] In his habeas petition, Petitioner asserts that these are the same issues as raised in his Rule 3.850 Motion. (Doc. 1 at 10, 16, 21, 27, 33, 37, 42-43, 48). However, it appears that Petitioner did not properly exhaust Grounds Two or Seven. The Court will individually address the exhaustion of these grounds.

"the defense had prepared a video reenactment of the crime scene and the neighbor's side view of the house next door, and the video recording was poor quality." (Id.)   Petitioner notes that State's witness Michael Brown testified that he saw Petitioner exit the victim's home after hearing gunshots. He now argues that the video, if played in full, would have demonstrated that Mr. Brown had an obstructed view, and as a result, his identification of Petitioner as the person who left the victim's home was unreliable. (Id. at 7).

Petitioner raised this ground in his Rule 3.850 Motion, and the postconviction court denied it on both Strickland prongs without an evidentiary hearing:

> Defendant has not satisfied the first prong of Strickland. Defendant has merely claimed that the video did not play correctly in its entirety and therefore, his counsel's performance was "deficient," and his counsel's "deficient performance" prejudiced his case. Defendant ignores the remaining cumulative weight of the State's evidence presented at trial. Even if the jury saw the video from beginning to end it is not probable the "results of the proceeding would have been different." Strickland at 694.   That is because the video evidence did not negate the fact that Mr. Brown testified he could view a person exiting the victim's front porch area.
>
> Defendant's claim that the jury may have viewed the non-operating video as a ruse is without merit. The jury clearly saw that the video contained content and were aware that the video presentation was problematic. Ultimately, the defense team was able to get their point before the jury--the view from Mr. Brown's home was not completely unobstructed.

> The jury was able to balance this evidence
> against that provided by the State and as the
> verdict illustrates, the jury chose to find
> the Defendant guilty. The Defendant's claim
> does not rise to the level [of] Strickland and
> is based upon mere speculation. Jones v.
> State, 845 So.2d 55, 65 (Fla. 2003), citing
> Mararaj v. State, 778 So. 2d 944, 951 (Fla.
> 2000). His request for an evidentiary hearing
> on Ground 1 will be denied.

(Doc. 20-8 at 43-44) (internal citations to the record omitted).
A review of the record supports the state court's conclusions on
both the performance and prejudice prongs of Strickland.

At trial, witness Michael Brown, who lived next door to the
victim, testified that around the time of the shooting, he heard
"something that sounded like fireworks or something outside."
(Doc. 20-5 at 23, 27-28)  He looked out of his bedroom window and
"saw a car come around and stop a couple houses down, and then I
saw Mr. Campbell come out and get into the car and leave."  (Id.
at 23, 26-27).  The man he saw was holding a white towel.  (Id.
at 27).  Mr. Brown testified that there were no obstructions
between his window and the pathway from the victim's door.  (Id.
at 28).  Mr. Brown telephoned his fiancé to tell her he heard
something, and he went to his side yard to see if anyone else came
from the victim's house.  (Id. at 32-33).  About ten minutes
later, he saw the victim's daughter, Courtney, returning from
school.  He told her what he had heard and observed and asked
whether she wanted him to walk to the door with her.  (Id. at 33).
Courtney "laughed it off," and entered the home alone, but ran out

"screaming and crying" less than a minute later.  (Id. at 34).
Mr. Brown called the police.   (Id. at 35).   He identified
Petitioner as the person he saw leaving the victim's home.  (Id.
at 37).

Counsel attempted to lessen the impact of Mr. Brown's
testimony by calling private investigator Edward Lopez as a
witness. (Doc. 20-5 at 490).   Mr. Lopez took a video from (or
near) the window that Mr. Brown looked from when he witnessed
Petitioner leave the victim's home.  (Id. at 492-93).  Counsel had
some difficulty getting the video to play.  (Id. at 504).  Because
it was close to 5:00 p.m., the trial court offered to let Counsel
play the video the following day.  (Id. at 505).  The next morning,
the defense began playing the video—with Mr. Lopez narrating—but
the video stopped playing at "the window with the view towards the
residence where the scene took place."  (Id. at 593).  Counsel was
unable to restart the video, so he asked the Court to allow him to
question Mr. Lopez about his observations.  (Id. at 597).  Mr.
Lopez testified that the line of sight from Mr. Brown's window
would not allow the viewer to see the front of anyone leaving the
victims home.  Counsel questioned Mr. Lopez as follows:

> Q.   All right.  And what else could you see
> as far as angle of a person coming out of
> the house next door, 1221 Pondella?
>
> A.   You could see anyone that came out, not
> from the door, but you could see one step
> off of the front porch.

> Q.   And can you describe the view a person would have from Mr. Brown's perspective of a person walking out to Pondella Circle?
>
> A.   You would see I guess the side of the person going out towards Pondella.
>
> Q.   Okay.  And then if that person took a left on Pendella, what would you see from Mr. Brown's perspective?
>
> A.   You would see the back of that person.

(Doc. 20-5 at 600).  On cross-examination, Mr. Lopez testified that brush, which he observed in pictures on the Lee County property appraiser websites since 2007, may have obscured the view from Mr. Brown's bedroom window.  (Id. at 602).  In closing, Counsel argued that Mr. Brown's identification was not reliable. (Id. at 663-67).  He noted that Mr. Brown had only a back view of the person leaving the house, and only for a few seconds.  (Id. at 663-64).  Counsel argued that Mr. Brown assumed that the person leaving the house was Petitioner "because that's who lives there, and he's walking quickly."  (Id. at 665).  He pointed out that Mr. Brown described the car the man entered, the occupants of the car, and the color of the towel the man was holding, yet he could not identify the colors of the shirt or pants he was wearing.  (Id. at 666).

Petitioner now argues that the full video presentation "would have shown that the view of [Mr. Brown's] side window was obstructed, which made the witness being able to positively identif[y] this Petitioner virtually impossible and so casting

reasonable doubt into the mind of the impaneled jury." (Doc. 1 at 7). Petitioner merely speculates that the jury would have rendered a not-guilty verdict had the entire video been played. He did not actually provide the full video to the postconviction court, nor does he do so here. "Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Petitioner now argues he should have. Wong v. Belmontes, 558 U.S. 15, 27 (2009) (quoting Strickland, 466 U.S. at 694). In other words, it is Petitioner's burden on habeas review to offer the video that he believes exonerates him. Mere speculation that favorable evidence may exist is insufficient to show either deficient performance or prejudice. See Jones v. State, 845 S. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions"); Tejada v. Duggar, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Moreover, Counsel was able to elicit the same information from Mr. Lopez's testimony that he now argues could have been shown in the video—namely that the view from Mr. Brown's window would have shown only the back or side of the man leaving the home and that brush partially obscured even that view. Counsel is not ineffective for failing to present duplicative or redundant evidence. See Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318,

1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").

Finally, Counsel chose not to further delay the trial by asking for a continuance and to instead elicit the same information through Mr. Lopez's testimony. (Doc. 20-5 at 596-97). This Court must "be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). That Petitioner now disagrees with Counsel's decision does not overcome the strong presumption that "counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).

Petitioner has demonstrated neither deficient performance nor resulting prejudice from Counsel's decision not to seek a continuance to repair the video. The state court's adjudication of Ground One did not implicate either prong of section 2254(d), and Petitioner is not entitled to federal habeas corpus relief on Ground One.

**B.   Ground Two**

Petitioner asserts that Counsel was ineffective for failing to secure Malissa Estate, Shakitta Battle, Pearie Derville, and Danna as alibi witnesses. (Doc. 1 at 11). He asserts that

postconviction counsel misadvised him to withdraw this ground at the evidentiary hearing.  (<u>Id.</u> at 14).  He also argues that the claim was exhausted in state court because it was "intermingled" with claim three.  (<u>Id.</u>)[4]

Postconviction counsel announced at the hearing on Petitioner's Rule 3.850 Motion that the defense was withdrawing Ground Two "relating to alibi witnesses." (Doc. 20-8 at 335-36).  Therefore, instead of developing this claim in state court as required by 28 U.S.C. § 2254(b)(1)(A), Petitioner expressly abandoned it.  As a result, it is unexhausted and procedurally defaulted.  See <u>Morris v. Kemp</u>, 809 F.2d 1499, 1502-03 (11th Cir. 1987) (affirming district court's dismissal of a claim raised in a state habeas petition but waived at the evidentiary hearing on the petition, stating that "Petitioner thus committed a procedural default when he failed to assert his ineffective assistance claim in his first [state] habeas proceeding, preferring to stand on his claim of attorney-client privilege"); see also <u>Wong Doo v. United States</u>, 265 U.S. 239, 241 (1924) ("The petitioner had full opportunity to offer proof of it at the hearing on the first petition, and, if he was intending to rely on that ground, good faith required that he produce the proof then.  To reserve the proof for use in attempting to support a later petition, if the

---

[4] In Ground Three, Petitioner alleges that Counsel was constitutionally ineffective for advising him against testifying at trial.

first failed, was to make an abusive use of the writ of habeas corpus.").

In the final order denying the Rule 3.850 Motion, the postconviction court dismissed Ground Two with prejudice because "[p]ostconviction counsel withdrew this ground at the evidentiary hearing." (Doc. 20-8 at 284). Nevertheless, Petitioner challenged the denial on direct appeal. (Doc. 20-9 at 12-15). The Second DCA issued a silent affirmance, and the Court presumes that the appellate decision rests on the procedural default rather than on the merits. See Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir. 1989)("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").

The Court need not consider whether cause exists for failing to exhaust this claim because even if exhausted, Petitioner is not entitled to federal habeas relief. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") This is because Petitioner merely speculates that any of these witnesses would have testified and would have testified favorably. He has not offered sworn testimony from any of the alibi witnesses detailing what they would have said. See Johnson v. Alabama, 256

F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)); see also United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Without such a showing, Petitioner cannot demonstrate Strickland prejudice.  See Jones v. State, 845 So. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions."); Tejada, 941 F.2d at 1559.  Therefore, in addition to being dismissed as unexhausted, Ground Two is denied on the merits.

### C.  Ground Three

Petitioner asserts that Counsel was constitutionally ineffective for advising him against testifying at trial. (Doc. 1 at 18).  Specifically, he asserts that Counsel advised him not to testify because the jury "would be told of Petitioner's prior convictions" if he did so.  (Id. at 21-21).  He asserts that his testimony, combined with the testimony of the missing alibi

witnesses, would have resulted in a different outcome at trial. (Id. at 21).

Petitioner raised this claim in his Rule 3.850 Motion, and after an evidentiary hearing at which both Petitioner and Counsel testified, the postconviction denied the claim in a written order. (Doc. 28-8 at 284-86).  The court summarized the testimony of both Petitioner and Counsel and found that:

> [T]he testimony of [Counsel] is more credible than that of Defendant.  The Court finds that the advice given by [Counsel] was accurate, and that [Counsel's] performance was not deficient.  There is no prejudice as there is no reasonable probability of a different outcome because Defendant was correctly advised and voluntarily chose not to testify based on that correct advice.  Defendant has failed to meet his burden of establishing both prongs of Strickland.

(Id. at 285-86).  The state court's conclusion that Counsel's testimony was more credible than Petitioner's is a finding of fact, entitled to deference in this Court.  See Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."); Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (recognizing that federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

The postconviction court's finding that Counsel's advice was correct is also entitled to deference.  See Strickland, 466 U.S.

at 689 (recognizing that counsel's strategic choices are "virtually unchallengeable"). At the evidentiary hearing, Counsel testified that he did not think it would have benefitted Petitioner to testify because "[h]e had prior felony convictions, and . . . he had given a detailed statement to the police concerning this event." (Doc. 20-8 at 372-73). He denied telling Petitioner that the jury would hear about the facts of his prior convictions. (Id. at 373). He testified that he "absolutely" told Petitioner that the decision to testify was "ultimately" his (Petitioner's) decision and that Petitioner never told him that he had changed his mind and wanted to testify. (Id. at 374-75). Counsel stated that, had Petitioner told him he wanted to testify, "[h]e would have testified." (Id. at 375).

At bottom, Counsel made a tactical decision to advise Petitioner against testifying at trial, and Petitioner chose to take that advice. The state courts' rejection of Ground Three was neither contrary to Strickland nor based on an unreasonable determination of the facts, and Petitioner is not entitled to federal habeas corpus relief on Ground Three.

### D.  Ground Four

Petitioner asserts that Counsel was ineffective for failing to convey a plea offer proposed by the State. (Doc. 1 at 22). He also paradoxically asserts that he rejected the State's plea offer of thirty years' incarceration because Counsel did not advise him

that he faced of maximum sentence of life without the possibility of parole if he proceeded to trial.  (Id.)

Petitioner raised this claim in his Rule 3850 Motion, and the postconviction court again found Petitioner's testimony to be less credible than Counsel's. (Doc. 20-8 at 287–88.)  The state court summarized the testimony and denied the claim as follows:

> Defendant argued that trial counsel was ineffective for failing to convey a plea offer and failing to advise him as to the maximum sentence.  Defendant testified that a 30 year plea offer was conveyed by prior counsel, and he wanted to take that offer.  He told [Counsel] about that offer and wanting to accept it, and [Counsel] said he would look into it.
>
> Defendant believed he was forced to go to trial, because [Counsel] said the offer was not on the table.  Defendant stated he did not know what happened to the offer, because the case was assigned to a different judge, and he was not given a chance to entertain it.
>
> On cross examination, Defendant testified that he would have accepted the plea for the sake of his family even though he maintained his innocence. [Counsel] did not tell him about the plea offer conveyed to him by prior counsel. Defendant stated he was confused because the case went through different judges, different prosecutors, and five or six defense attorneys.  Defendant testified that he believed the maximum sentence was 25 years from the scoresheet.  He knew the offense was punishable by life, but the scoresheet said 25 years, so he thought the punishable by life sentence applied if he went to trial and was convicted.
>
> [Counsel] testified that he never saw a plea offer noted in the file. Defendant never mentioned a plea offer to him, or said a plea offer had been made by the prior prosecutor.

The prosecutor never gave him a plea offer.
He stated that he knew the case was going to
trial due to the fact that there was no plea
offer, the minimum mandatory sentences, and
the facts of the case. [Counsel] testified
that he told Defendant he would probably
receive a life sentence due to the facts of
the case, and it was unlikely he would receive
a term of years. He stated he asked the
prosecutors, and there was no plea offer. He
did not recall if the trial court asked if a
plea offer had been made. He did not recall
talking to prior counsel about a plea offer,
but stated his impression was there was not a
plea offer.

The record reflects that the trial court
inquired about the existence of a plea offer
on October 19, 2010, June 13, 2011, and June
14, 2011, and was told there was no plea offer.
Relevant portions of those transcripts are
attached. The record supports [Counsel's]
testimony that there was no plea offer
extended while he was appointed. Further, the
fact that Defendant did not ask about an
alleged prior plea offer on any of these
occasions undermines Defendant's credibility.
If, as Defendant testified, he was confused by
the change in dockets and attorneys, and he
believed a plea offer had been made that he
wished to accept, he should have spoken up to
ask about it when it was stated there was no
offer on each of those three occasions.

Further, if there was a prior plea offer,
Defendant admitted it had been conveyed by
prior counsel. The Court notes that Defendant
testified that he did not have sufficient time
to "entertain" the alleged offer prior to the
change to another docket. There would be no
prejudice to Defendant by [Counsel] not also
conveying that plea offer, since the new
prosecutor did not choose to renew or adopt
that alleged offer and there was no offer made
while Mr. Kelly was appointed. If a prior plea
offer did exist, Defendant has not met the
second prong of Alcorn v. State, 121 So.3d 419

> (Fla. 2013), that the prosecutor would not
> have withdrawn the offer.
>
> To the extent Defendant argued [Counsel]
> misadvised him about the maximum sentence,
> [Counsel] testified that he told Defendant he
> would probably receive a life sentence and
> that a term of years was unlikely. Since the
> maximum sentence was life in prison, this was
> accurate advice. Given Defendant's criminal
> history, his testimony that he believed the
> maximum sentence was 25 years despite knowing
> the offense was punishable by life is not
> credible.
>
> The Court finds [Counsel's] testimony more
> credible than that of Defendant. The Court
> finds that [Counsel's] performance was not
> deficient, and he did not fail to convey a
> plea offer or misadvise Defendant regarding
> the maximum sentence. Defendant has failed to
> meet his burden of establishing both prongs of
> Strickland.

(Id.). The record supports the postconviction court's rejection

of this claim.

First, although Petitioner now argues that Counsel never told

him of a plea offer, Petitioner testified that he informed Counsel

of the plea, and Counsel said he "would look into it." (Doc. 20-8

at 339). Petitioner was also unclear as to whether the plea offer

came from Counsel or from prior defense counsel, but he noted he

did not have enough time to think about it before the State took

the offer off the table. (Id. at 343). When pressed by the State

about the inconsistencies between the statements made in his motion

and his evidentiary hearing testimony, the following exchange

occurred:

Q.   Isn't it true, Mr. Campbell, that in your
     motion for postconviction relief your
     ground three claim is actually that
     [Counsel] failed to even tell you about
     a 30-year plea offer?

A.   Yeah. He failed to tell me about it,
     because when I was talking to him about
     it when he first got my case, my case
     went from one panel to the next, and he
     failed to disclose I mean, whatever they
     had for me available he was just
     coming to visit me or whatever making me
     know that he was my counsel and, you
     know, it was so much stuff to be done
     with my case as far as depositions, may
     case was like –

Q.   Okay, Mr. Campbell, I don't want to get
     off track here.  Didn't you testify on
     direct that you actually discussed a 30-
     year plea offer with Mr. Campbell?

A.   With Mr. Campbell?

Q.   I mean – sorry.  Isn't it true you
     discussed the 30-year plea offer with
     your attorney, Mr. Kelly?

A.   Yes, Ma'am

Q.   Okay. So do you find that it was
     misleading that as part of your ground
     for postconviction relief you said that
     your attorney failed to convey that offer
     to you, that you weren't even aware of
     the offer?

A.   Ma'am, I don't find it misleading,
     because I was confused. My case got --
     went from one panel to the next, and when
     I got Mr. Kelly as my attorney I was just
     asking him, I want to take this deal. I
     want to take, you know, and he ain't
     disclose -- I mean, whatever it was he
     came to me and told me well, they ain't
     got that deal no more. So whatever it was
     when he first -- when he first took my

```
                case, you know, I was like behind. I was
                --

        Q.      So is it your testimony, Mr. Campbell,
                that in your original grounds for
                postconviction relief you did not state
                that you were uninformed of a 30-year
                plea offer?

        A.      Well, I was uninformed what -- because I
                don't know -- I mean, I ain't got the
                State's file. I ain't got access to this
                paperwork. I mean, my attorney, Mr.
                Kelly, I was uninformed. I know one
                lawyer was telling me one thing, and I
                was uninformed there was an offer with
                Mr. Kelly.

        Q.      Mr. Campbell, what were the terms of the
                30-year offer?

        A.      I don't know.
```

(Doc. 20-8 at 344-45).    In contrast to Petitioner's apparent

confusion as to whether Counsel had discussed a plea offer with

him, Counsel testified that "[t]here was no plea offer.  To my

knowledge there was never a plea offer."  (Id. at 379).

    The obvious inconsistencies between Petitioner's Rule 3.850

motion and his evidentiary hearing testimony (and inconsistencies

in the testimony itself), support the state court's credibility

determinations.  Given that the state court reasonably concluded

that the State had not made a plea offer of thirty years or

otherwise, Counsel could not have been ineffective for failing to

convey the offer to Petitioner.  Likewise, because there was no

plea offer, Petitioner cannot demonstrate Strickland prejudice

from Counsel's alleged misadvise regarding Petitioner's sentencing

exposure.   Petitioner has not demonstrated entitlement to federal habeas corpus relief on Ground Four.   28 U.S.C. § 2254(d).

### E.   Ground Five

Petitioner asserts that Counsel was ineffective for failing to object to the "illegal twenty-five year minimum mandatory sentence" he received for second degree murder with a firearm. (Doc. 1 at 29).   Petitioner appears to base this argument on the fact that no firearm was entered into evidence at trial, and as a result, there was insufficient evidence to show that he actually possessed or discharged a firearm during the murder. (Id.) Petitioner raised this claim in his Rule 3.850 Motion, and the postconviction court rejected it on both Strickland prongs without an evidentiary hearing:

> The Court finds Defendant has not satisfied either Strickland prong in this allegation because his assertion his counsel was ineffective is not accurate. "[A] defendant's use of a firearm during a crime can be established even if the gun is not recovered and introduced into evidence. Circumstantial evidence can be sufficient to establish the use of a firearm." Mitchell v. State, 698 So.2d 555, 558 (Fla. 2d DCA 1997). Had counsel objected to the mandatory minimum sentence merely because the weapon was not recovered, the Court would have overruled the objection pursuant to Mitchell. This allegation is legally insufficient because counsel cannot be deemed ineffective for failing to prevail on a meritless issue. Tefeteller v. Dugger, 734 So.2d 1009, 1020 (Fla. 1999).

(Doc. 20-8 at 45-46).   A review of the record and applicable law supports the state postconviction court's conclusions.

For any relief to be afforded under Strickland, this Court would first have to conclude that the postconviction court misinterpreted state law when it determined that a defendant's use of a firearm during a crime can be established by circumstantial evidence. However, it is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997). Florida's state courts have already answered the question of what would have happened had Counsel objected to the imposition of a minimum mandatory sentence for possession of a firearm—the objection would have been overruled. And in fact, the law is clear in Florida that "a defendant's use of a firearm during a crime can be established even if the gun is not recovered and introduced into evidence." Mitchell v. State, 698 So. 2d 555, 558 (Fla. 1997); Flowers v. State, 738 So.2d 412, 413 (Fla. 5th DCA 1999) (finding sufficient evidence to conclude that defendant possessed a firearm during a robbery, even absent introduction of the weapon into evidence).

Moreover, Petitioner raises this claim as one of ineffective assistance of counsel. Therefore, under Burt v. Titlow's "doubly deferential" standard of review, not only must Petitioner show that the State was required to produce the firearm used to shoot the victim, he must also show that no competent counsel could have

concluded otherwise.  571 U.S. at 15.  Given the clarity of the
law on this issue and the fact that the victim was shot several
times, reasonable competent counsel could have declined to object
to Petitioner's 25-year minimum mandatory sentence.

The state court did not unreasonably apply <u>Strickland</u> to his
case, and the rejection of Ground Five was not based on an
unreasonable determination of the facts in light of the evidence
presented in Petitioner's state court proceeding.  Petitioner is
not entitled to habeas relief on Ground Five.  28 U.S.C. § 2254(d).

**F.   Ground Six**

Petitioner asserts that Counsel was ineffective for failing
to "properly" file a motion to introduce testimony of two potential
defense witnesses—Crawford and Richardson.  (Doc. 1 at 34).[5]
Specifically, he argues that Counsel did not advise the state court
that the witnesses could not invoke their Fifth Amendment rights
against self-incrimination because they waived their rights when

---

[5] These witnesses were the victim's prior husband and
boyfriend.  (Doc. 20-2 at 259).  Both had children and turbulent
relationships with the victim.  (<u>Id.</u>)  Counsel moved to allow
these witnesses to testify that they had engaged in prior incidents
of domestic violence towards the victim.  (<u>Id.</u> at 230).  At a
pretrial hearing, Counsel complained to the trial court that
"[n]either one of these individuals were ever suspected or ever –
[the investigating police officer] didn't know their background,
their criminal history.  He didn't know where they were as far as
an alibi.  There was no investigation.  There was absolutely no
other suspects once Mr. – someone told him that they saw Mr.
Campbell exit the home."  (<u>Id.</u> at 259–60).  In a well-reasoned
order, the trial court denied Petitioner's motion to introduce
Crawford's or Richardson's testimony. (Doc. 20-3 at 67–69).

they gave deposition testimony.  (Id. at 35).

When Petitioner raised this claim in his Rule 3.850 Motion, the postconviction court rejected it without holding an evidentiary hearing.  Noting that the issue had been "extensively and thoroughly litigated at the trial court level," the postconviction court determined that "the trial court did not abuse its discretion in declaring [that] Crawford and Richardson had a Fifth Amendment right to refuse to testify at Defendant's murder trial."  (Doc. 20-8 at 46).

Ground Six suffers from the same defect as Ground Two. Namely, Petitioner merely speculates that these witnesses would have provided helpful information.  He has not offered this Court the sworn testimony of either witness implicating themselves in the victim's murder or providing any other favorable evidence.  In fact, a review of these witnesses' pre-trial depositions shows that both Crawford and Richardson provided damaging testimony about Petitioner.[6]  Specifically, Crawford testified that the victim told him that she and Petitioner argued too much and that she was "tired" of him.  (Doc. 20-8 at 53).  Crawford's daughter told him that Petitioner had twisted the victim's arm.  (Id. at 53-54).  She also told him that the victim wanted Petitioner out

---

[6] Neither party was informed of his Fifth Amendment right against self-incrimination at the pretrial deposition.  (Doc. 20-2 at 256).  Both invoked the right at the pretrial hearing on this matter.  (Id. at 249, 253).

of her house.   (Id. at 55).   Crawford described an incident in which the victim brought his (Crawford's) crying children to his house at 2:30 in the morning "trying to get away from that idiot." (Id. at 58).   Richardson testified that he encountered Petitioner in prison and asked him why he killed the victim.   (Id. at 76). While Petitioner never admitted or denied killing the victim to Richardson, he said that he and the victim fought about "income tax money," and he just "snapped."   (Id.)   Richardson's son told him that he did not like Petitioner because he argued with the victim all the time.   (Id. at 81-82).   Richardson also said that the victim had told him that Petitioner was "real jealous" and that "they [were] always arguing and fighting."   (Id. at 82).

Ground Six is based on three layers of speculation. Speculation that the trial court would have allowed the witnesses to testify had Counsel argued as Petitioner now suggests, speculation that these witnesses would have testified favorably, and speculation that the jury would have found him not-guilty had they done so.   Petitioner has not carried his burden on federal habeas review.   See Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").   Ground Six is denied.   28 U.S.C. s 2254(d).

G.    **Ground Seven**

In  Ground  Seven,  Petitioner  argues  that  Counsel  was
ineffective for "failing to object to the trial court judge['s]
erroneous admission of collateral act evidence." (Doc. 1 at 38).[7]
Petitioner raised a similar claim in his brief on direct appeal
where he argued that the trial court erred when "it allowed the
jury to hear evidence of unrelated, irrelevant collateral acts
allegedly committed by Mr. Campbell." (Doc. 20-6 at 32).  In the
same brief, Petitioner asserts that "this issue was raised and
litigated  pretrial  and  is  thus  preserved."   (Id.  at  33).
Petitioner described the pretrial history of this claim in the
appellate brief as follows:

> The state did not file a notice of intent to
> use  collateral  act  evidence  pursuant  to
> §90.404(2), Florida Statutes. The issue was
> first raised when the defense filed a motion
> to exclude such evidence. It was only after a
> hearing and arguments on the issue that the
> state  finally  filed  a  motion  to  admit  the
> evidence. Even then, the state argued this was
> not  collateral  act  evidence,  so  the
> requirements  of  §90.404  did  not  apply.  It
> simply argued that the evidence was relevant,
> and  thus  admissible.  Yet  the  basis  for  its
> argument was the claim that the evidence was
> relevant on the issues of motive and intent.
> Of  course,  those  are  classic  collateral  act
> issues,  and  mentioned  specifically  in  the
> statute.   So  the  state's  own  argument  shows

---

[7] Petitioner  does  not  describe  the  allegedly  erroneously
admitted evidence in his habeas petition.  However, in his brief
on direct appeal, he argued that the state court should not have
admitted evidence that he and the victim often argued, that he
once threw a trash can at the victim, and that he once chased the
victim to a neighbor's home.  (Doc. 20-6 at 35).

> that it misunderstood the law relating to
> collateral act evidence.
>
> The trial court erroneously accepted the
> state's argument, and concluded that the
> evidence was not <u>Williams</u> rule evidence.

(Doc. 20-6 at 33-34) (citations to the record omitted).  After
hearing oral arguments (<u>Id.</u> at 82), the Second DCA affirmed without
a written opinion. (<u>Id.</u> at 85).

Respondent argues that Ground Seven is unexhausted and
procedurally defaulted because Petitioner did not raise it in state
court as an ineffective assistance claim.  (Doc. 19 at 28).
Indeed, it appears that—despite his statement to the contrary in
his petition (Doc. 1 at 43)—Petitioner never raised this issue as
one of ineffective assistance of counsel in state court, and as a
result, the claim must be dismissed as unexhausted.

It is unnecessary for the Court to consider whether Petitioner
has shown cause for the default because the claim lacks merit.  28
U.S.C. § 2254(b)(2).  In his own brief on direct appeal, Petitioner
states that Counsel moved to exclude the evidence.  (Doc. 20-6 at
33).  Accordingly, despite Petitioner's argument otherwise,
Counsel raised the collateral evidence issue in state court.
Moreover, to find that Petitioner suffered prejudice, the Court
would first have to conclude that the state court misapplied state
law.  As noted, state courts "are the final arbiters of state law,
and federal habeas courts should not second-guess them on such
matters." <u>Agan</u>, 119 F.3d at 1549; <u>Estelle v. McGuire</u>, 502 U.S. 62,

67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")

The state courts have already answered the question of what would have happened if Counsel had raised further objections to the admission of the collateral evidence.  The challenge would have failed.  Since Counsel would have been unsuccessful in further objections to the evidence, Petitioner cannot show Strickland prejudice.  In addition to being subject to dismissal as unexhausted.  Ground Seven is denied on the merits.

**H.   Ground Eight**

Petitioner asserts that Counsel was ineffective for failing to properly file a motion to dismiss.  (Doc. 1 at 44).  To the extent this is the same claim as raised as ground eight in Petitioner's Rule 3.850 Motion, he argues that Counsel should have argued, on double jeopardy grounds, that the case against him should have been dismissed after the initial jury panel was dismissed following a disturbance in the courtroom.

The postconviction court described and dismissed the claim as follows:

> Defendant alleges ineffective assistance of counsel in that counsel failed to file a motion to dismiss the case to prevent a second trial 'on the merits.' Defendant alleges he did not consent to a dismissal of the initial trial and double jeopardy should have precluded a second trial "because Defendant was tried again for a crime he was legally acquitted on in the first trial."

33

> Defendant's ineffective assistance of counsel
> allegation is without merit. There is no
> evidence in the record to support his
> assertion that a jury was sworn to hear
> evidence against him. The record reveals that
> the *voir dire* process was almost complete in
> the first attempt to seat a jury.  A lunchtime
> altercation caused the trial judge to *sua
> sponte* dismiss that jury. The State and
> defense counsel both concurred. However, the
> jury was not sworn and heard no evidence
> against the Defendant. Prejudice did not
> attach to the Defendant's case and the double
> jeopardy issue is not applicable. See Corneiro
> v. Solomon, 450 So. 2d 599 (3d DCA 1984);
> Edwards v. State, 336 So. 2d 447 (3d DCA 1976).

(Doc. 20-8 at 49) (citations to the record omitted).  Petitioner does not point to errors in the state courts' reasoning that would entitle him to federal habeas corpus relief.

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." United States v. Dinitz, 424 U.S. 600, 606 (1976) (footnote omitted). The United States Supreme Court has explained that "[i]n the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn." Serfass v. United States, 420 U.S. 377, 388 (1975); Crist v. Bretz, 437 U.S. 28, 35 (1978).  When a criminal defendant requests and is granted a mistrial, double jeopardy provisions do not apply, absent prosecutorial or judicial misconduct which involves "bad faith in order to goad the [defendant] into requesting a mistrial." Dinitz, 424 U.S. at 607-08.

In this case, a disruptive incident occurred in the courtroom after the jury was empaneled, but not sworn.  A portion of the trial transcript describing the court's reaction to the incident is attached to the order denying Petitioner's Rule 3.850 Motion. The following exchange between Counsel, the State and the trial court occurred:

> COURT.   Counsel, obviously, we have a jury waiting outside, and under the circumstances I'm inclined to mistry this case and start another time.  Any comment?
>
> COUNSEL. Your Honor, no comment.  I'm sorry, I just have to confer with my client about that if I can.
>
> COURT.   If you want to confer.  Does the state have a comment about it?
>
> STATE.   No, Judge.
>
> . . .
>
> COUNSEL. Yes.   The defendant would like a mistrial.
>
> COURT.   I realize that -- and the courtroom has been controlled now by the deputies, but -- realize that the jury was outside in the hallway.  However, this -- the commotion that has been created, I would be concerned that it could have carried out into the hallway. I think obviously everybody involved is a little bit traumatized. I think, in an abundance of caution, it would be better to begin anew with a new jury panel even though a lot of work was done in this case.

(Doc. 20-8 at 118-19).  It is clear from the remainder of the

transcript that the jury had not yet been sworn or heard evidence when the disturbance occurred and the mistrial declared.  In fact, the jury panel was curious as to who had been chosen to serve as jurors at trial.  (Id. at 123).  In addition, Petitioner requested the mistrial, and there is no evidence of bad faith from the state or court goading him into making the request.

Counsel had no grounds to move to dismiss the case on double jeopardy grounds, and defense counsel's performance is not ineffective for failing to make a meritless motion.  See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).  Thus, the state court's adjudication of this claim was neither contrary to clearly established federal law nor based upon an unreasonable determination of facts.  28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief on Ground 8.

IV.  **Conclusion**

Based on the foregoing, Petitioner is not entitled to relief on the habeas claims presented here.  No allegation not specifically addressed has been found to warrant habeas relief.

Accordingly, it is ordered that:

1.  Grounds Two and Seven of Tyrone Campbell's 28 U.S.C. § 2254 petition are **DISMISSED** as unexhausted.  Alternatively, Grounds Two and Seven are **DENIED**.  The remaining claims are **DENIED**.

2.    The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

### <u>Certificate of Appealability</u>[8]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  When, as here, the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

---

[8] Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484.

Upon consideration of the record, the Court declines to issue a COA.  Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on May 3rd, 2022.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA:  FTMP-2

Copies furnished to:
Counsel of Record
Unrepresented Parties